NOT FOR PUBLICATION                                                                                          [14]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                          :
MICHAEL O'SHEA,                :
                                          :
        Petitioner,         :
                                          :          Civil No. 04-5016 (FLW)
    v.                              :
                                          :          **OPINION**
UNITED STATES OF AMERICA :
                                          :
        Respondent.       :
_____:

**WOLFSON, District Judge**

      This matter comes before the Court on a Motion to Vacate, Set Aside or Correct a Sentence pursuant to 28 U.S.C. §2255 by Petitioner pro se, Michael O'Shea ("O'Shea"). Petitioner alleges that he was denied the effective assistance of counsel because: (1) defense counsel did not request a downward departure in petitioner's sentence for time petitioner spent in home confinement prior to commencing a federal prison sentence; and (2) the imposition of a term of 60 months supervised release following a prison sentence of 60 months violates Petitioner's constitutional rights. The Court has considered the moving, opposition and reply papers and for the reasons that follow, the Court denies Petitioner's Motion.

**I. BACKGROUND**

      On or about January 15, 2002, petitioner entered the Farmers & Mechanics Bank in Mt.

Laurel, New Jersey, with a weapon and removed a total of $17,274. 61 from the tellers' drawers. Petitioner placed the money in a back pack and fled the area. On February 1, 2002, O'Shea was arrested on state charges. On May 7, 2002, a federal complaint and arrest warrant were filed against O'Shea. On May 8, 2002, the Honorable Robert B. Kugler held an initial appearance. Petitioner was ordered detained and was taken into the custody of the U.S. Marshal Service and transported to the Federal Detention Center in Philadelphia. A two count indictment was returned on May 21, 2002. On May 19, 2003, this Court dismissed the indictment without prejudice after finding that O'Shea's rights were violated under the Speedy Trial Act.

On the same day, a criminal complaint was filed against petitioner charging him with bank robbery in violation of 18 U.S.C. § 2113(d) and 18 U.S.C. § 2. On May 30, 2003, the Honorable Ann Marie Donio held an initial appearance at which time she entered a temporary order of detention and scheduled a bail hearing for June 3, 2003. On June 3, 2003 Judge Donio released the petitioner on a $50,000 bond and appointed the petitioner's mother and her boyfriend as third party custodians. The conditions of petitioner's release included 24-hour home confinement with electronic monitoring.

On June 4, 2003, a federal grand jury returned a two count indictment against O'Shea. Count one charged petitioner with the robbery of the Farmers & Mechanics Bank in the amount of approximately $17,274.61 by force or violence. Count two charged petitioner with robbery by use of a dangerous weapon, which was, in this case, a firearm. On June 6, 2003 this Court arraigned petitioner on the indictment at which time petitioner entered pleas of not guilty to both counts. On July 18, 2003, petitioner withdrew his prior pleas and entered a plea of guilty to count two pursuant to a written plea agreement.

2

On October 17, 2003, counsel for petitioner filed a notice of motion and supporting documents seeking a downward departure pursuant to 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0 based on petitioner's post-offense rehabilitation efforts. On October 24, 2003, after a hearing on petitioner's motion, this Court denied the motion, finding that petitioner had done well in pretrial release, but that his efforts were not exceptional and did not merit a departure. Thus, this Court determined that the applicable guideline range for petitioner was between 57 to 71 months and I sentenced petitioner to 60 months incarceration followed by a term of 60 months of supervised release. Petitioner commenced his sentence on December 19, 2003.

On July 2, 2005, petitioner filed the current petition pursuant to 28 U.S.C. § 2255. Petitioner asserts two grounds in support of his motion: first, petitioner contends that he was denied the effective assistance of counsel at the time of sentencing because defense counsel failed to file a motion for a downward departure pursuant to 18 U.S.C. § 3553(b)(1) and 5K2.0 to adjust the sentence to reflect time spent during home confinement; second, petitioner alleges that counsel failed to challenge this Court's imposition of a term of supervised release pursuant to 18 U.S.C. § 3583 when the addition of the supervised release would cause petitioner's total sentence to exceed the maximum applicable guideline range.

**II. DISCUSSION**

Initially, this Court must consider whether petitioner is entitled to an evidentiary hearing. An evidentiary hearing is required by § 2255 "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see also U.S. v. Day, 969 F.2d 39, 41-42 (3rd Cir. 1992); U.S. v. Baynes, 622 F.2d 66, 68 (3d Cir.1980). Where

the record affirmatively indicates that a petitioner's claim for relief is without merit, the claim may be decided on the record without a hearing. See Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir.1985). Thus, if the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted in support of a § 2255 motion, or if the movant would not be entitled to relief as a matter of law even if the factual predicates as alleged in the motion are true, it is not an abuse of discretion to elect not to conduct an evidentiary hearing. See Nicholas, 759 F.2d at 1075.  Because O'Shea is not entitled to the relief requested as a matter of law for the reasons discussed below, I find that an evidentiary hearing need not be conducted.

To prevail on a claim of ineffective assistance of counsel, a petitioner must satisfy a stringent two part test establishing that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  In order to prove deficiency under the first prong, petitioner must show that defense counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  Morever, to show actual prejudice under the second prong, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial."  Id.   In Strickland, the Court noted that simply showing that counsel's errors had some "conceivable effect on the outcome of the proceeding" was insufficient because nearly every act or omission by counsel would meet such a low threshold.  Id. at 694.  Instead, the Court held that a petitioner asserting a claim for ineffective assistance of counsel must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.

4

With this standard in mind, the Court considers petitioner's two claims for relief. Initially, petitioner claims that pursuant to 18 U.S.C. 3585(b), a defendant is entitled to credit towards a prison sentence for any time he has spent in "official detention prior to the date the sentence" commenced. Petitioner contends that because his counsel failed to argue for an adjustment to his sentence for the period of time during which petitioner was subject to home confinement, he was deprived of the effective assistance of counsel. In other words, petitioner equates home confinement with official detention. The Court does not agree.

In Reno v. Koray, 510 U.S. 50, 54 (1995), the United States Supreme Court considered the question presented here; specifically, in Reno, the Court determined whether a federal prisoner was entitled to credit against his sentence under 18 U.S.C. 3585(b) for time spent in a community treatment center while petitioner was released on bail. There, the Court held that a federal prisoner was not entitled to credit for time spent in a community treatment center because this was not "official detention" within the meaning of §3585(b). Id. Although there was a split in the Circuits precipitating the Court's decision in Reno, the Court eventually resolved this dispute in favor of the Circuit Courts that found that time spent in home confinement while on bond was not creditable towards a prison sentence. See United States v. Edwards, 960 F.2d 278, 282-83 (2d Cir. 1992) (time spent in home confinement under electronic monitoring while released on bond was not creditable towards sentence); United States v. Becak, 954 F.2d 386, 387-88 (6th Cir. 1992) (time spent at mother's house under conditions of release while released on bond not creditable towards sentence); United States v. Insley, 927 F.2d 185, 186 (4th Cir. 1991) (time spent in home confinement while released on appeal bond not creditable toward sentence). Because petitioner is requesting credit for time spent in home confinement, the Reno

Court's analysis applies and I find that petitioner is not entitled to credit for time he spent in home confinement.

Moreover, the Reno Court noted that the Bureau of Prisons ("BOP"), and not the Judiciary, is charged with administering the credit statute including determining the time credits to which prisoners are entitled. 510 U.S. at 54; see also United States v. Wilson, 503 U.S. 329, 334 (1992) ("After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence.. . Because the offender has a right to certain jail-time credit under § 3585(b), and because the district court cannot determine the amount of the credit at sentencing, the Attorney General has no choice but to make the determination as an administrative matter when imprisoning the defendant."). Therefore, even if petitioner were eligible for credit for time spent in home confinement, the BOP and not the judiciary is charged with the determination of these good time credits.[1]

In addition, Petitioner argues that counsel was ineffective for failing to move for a downward departure for the time petitioner spent in home confinement as a condition of his bail prior to his trial.  The Sentencing Guidelines permit a court to depart downward on the basis of "a combination of. . . characteristics or other circumstances none of which independently is sufficient to provide a basis for departure" in extraordinary cases that "differ[s] significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing." United States Sentencing Guidelines ("U.S.S.G.") §5K2.0 Commentary.  In other words, district courts have the authority "to depart in cases that feature

---

[1] To the extent that petitioner argues that he is similarly entitled to credit for time spent in jail pursuant to the first indictment, the Court holds that the BOP is responsible for determining whether petitioner is entitled to credit for this period of time.

aggravating or mitigating circumstances of a kind or degree not adequately taken into consideration by the Commission." Koon v. U.S., 513 U.S. 81, 94 (1996). In Koon, the Court explained that the availability of departure depends on whether the special factor used by the district court as a basis for departure is an "encouraged" factor because it is one that "the Commission has not been able to take into account fully in formulating the Guidelines," a "discouraged" factor, or one that is unmentioned in the Guidelines. Koon, 518 U.S. at 96. The Court noted that if the factor is one that is encouraged, the sentencing court is authorized to depart if the applicable guideline does not already take it into account. In contrast, a discouraged factor is not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range, and therefore should be relied upon only "in exceptional cases." Id. Finally, in discussing a factor that is not mentioned at all, the Court stated that the sentencing court had authority, after considering the "'structure and theory of both relevant individual guidelines and the Guidelines taken as a whole,' ... to decide whether it is sufficient to take the case out of the Guideline's heartland." Id. at 96 (quoting United States v. Rivera, 994 F.2d 942, 949 (1st Cir.1993)). The Koon Court thus recognized a flexibility in granting downward departures by district courts.

     Accordingly, Petitioner directs this Court to consider the time he spent in home confinement pending trial as a reason for downward departure; specifically, petitioner contends that his home incarceration was no better than time spent "in the confines of F.D.C. Philadelphia." Pet. Br. at 17. Petitioner's situation, however, does not present the type of extraordinary situation that would warrant departure. First, the Court notes that petitioner's reliance on United States v. Romualdi is misplaced; in Romualdi, the Third Circuit vacated the

7

defendant's sentence of 6 months home confinement. See 101 F.3d 971. However, unlike the defendant in Romualdi, the time that O'Shea spent in home confinement was not imposed as punishment, but as a condition of bail pending trial. Thus, Romualdi is not relevant to petitioner's situation. Moreover, despite petitioner's contention that home confinement is as restrictive as confinement in prison, the Court notes that home confinement is significantly different and less restrictive than pre-trial confinement in prison. See United States v. Hager, 288 F.3d 136, 137 (4th Cir. 2002)("Home confinement is not incarceration."); Posada v. United States, 2002 WL 663763 at *1 (E.D. Pa. 2002) ("Petitioner also asserts that he should receive credit pursuant to 18 U.S.C. § 3585(b) for the time he was subject to home confinement. A defendant is entitled under this statute to receive credit for time spent in "official detention." This credit is available only to a defendant who was detained in a penal or correctional facility subject to the control of the federal Bureau of Prisons.") For example, during the time petitioner was under home confinement, he was able to attend college on line, receive psychological counseling and look for employment. See United States Opposition Brief ("Opp. Br.") Ex. 4.

   Finally, this Court does not agree with petitioner's contention that denial of sentencing credit for time spent in home confinement is a mitigating factor that would permit a downward departure. If the court were to permit a downward departure on the basis of time spent in home confinement, this would essentially circumvent the statutory assignment to the BOP to determine whether to award sentencing credit. See discussion supra p. 5; cf,e.g. United States v. Newby, 11 F.3d 1143, 1148-49 (3rd Cir. 1993) (holding that the denial of good time credits is not a mitigating circumstance that would permit a downward departure by a court because it "is not a factor that relates to the defendants' guilt for their conduct" and is contrary to the goals of the

Sentencing Reform Act because such a departure would "give the defendants a lesser sentence than their respective crimes justly deserve." Id.).  Therefore, for all the reasons discussed above, the Court holds that petitioner's first ground for ineffective assistance of counsel is without merit.  Indeed, the Court finds it appropriate to comment that petitioner's counsel argued vigorously on petitioner's behalf for a downward departure based upon petitioner's post-arrest rehabilitation while on home confinement. Although this Court disagreed with counsel's position, supra p. 3, nonetheless it was petitioner's conduct on home confinement that afforded counsel the opportunity to make such an application.

In his second claim for ineffective assistance of counsel, petitioner alleges that the addition of the term of supervised release, when added to his prison sentence, caused his total sentence to exceed the maximum guideline range.  Because this Court determined that 71 months was the maximum applicable guideline range for imprisonment, petitioner argues that defense counsel's failure to challenge the imposition of a term of 60 months supervised release to follow petitioner's 60 months prison sentence deprived him of effective assistance of counsel.

Initially, O'Shea argues that although the statutory maximum sentence for armed bank robbery is 25 years, the statute only enables a court to impose a fine or a term of imprisonment, and not a term of supervised release. 28 U.S.C. § 2113(d).  He is wrong.  Pursuant to 18 U.S.C. § 3583, a court may impose a term of supervised release to follow a period of incarceration. Section 3583 provides that "[t]he Court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment."  18 U.S.C. § 3583.  Moreover, federal precedent establishes that a court may order a term of supervised release to follow the

9

statutory maximum term of imprisonment pursuant to 18 U.S.C. § 3583.  See e.g. United States v. Candalario, 37 Fed. Appx. 581, 583 (3d Cir. 2002); United States v. Jamison, 934 F.2d 371, 375 (D.C. Cir. 1991).  In addition, the Court notes that during petitioner's plea colloquy, this Court advised petitioner that "[t]he Court. . . may require you to serve a term of supervised release of at least 3 years but not more than 5 years that would begin at the expiration of any term of imprisonment imposed.  In addition, were you placed on a term of supervised release and subsequently violated any of those conditions, you could be sentenced to not more than 3 years imprisonment in addition to the term previously served . . .Do you understand the maximum penalties for the crime to which you are pleading guilty?"  Transcript of Plea of Michael O'Shea II, July 18, 2003, 9:2-9:18.  Not only did this Court advise petitioner of the possibility of his being sentenced to supervised release, but petitioner conceded that he understood the penalties including the possibility that he would be sentenced to a maximum of 5 years supervised release. Id. at 9:19.  Furthermore, at the sentencing, the Court noted that defendant's guideline sentence included a term of supervised release of three to five years.  Transcript of O'Shea's Sentencing, Oct. 24, 2003 ("Sentencing Transcript") at 4:24-25.  Thus, to the extent that petitioner argues that his counsel should have contested the length of the term of supervised release and his failure to do so amounted to prejudice under Strickland, the Court finds that the term of supervised release was clearly within the guideline range and therefore, could not have prejudiced petitioner.

Moreover, this Court specifically addressed the reasons why petitioner was being sentenced to the maximum period of supervised release. Cf. U.S. v. Pruden, 398 F.3d 241 (3rd Cir. 2005)(finding that a District Court may impose conditions of supervised release to the extent that the conditions are reasonably related to the purposes of supervised release.)  At petitioner's

sentencing, I explained that "I'm going to impose the maximum [supervisory] term [which in this case is five years] to make sure if you think in any way of failing you are going to be watched and that. . . the probation department will be there to assist and monitor and make sure you are following the rules so there is no slippage." Sentencing Transcript at 30:1-30:7.  Thus, the Court holds that petitioner's sentence of 60 months imprisonment followed by 60 months of supervised release was properly within the statutory framework and it was appropriate for the Court to sentence the petitioner to the maximum period of supervised release.

Petitioner additionally contends that the Supreme Court's decision in Apprendi rendered 18 U.S.C. § 3583, the supervised release provision of the Sentencing Reform Act, unconstitutional.  Apprendi v. New Jersey, 530 U.S. 466.  Essentially, petitioner argues that in Apprendi, the Court held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to jury and proved beyond reasonable doubt. Thus, petitioner alleges, because 18 U.S.C. 3583 requires a court to consider various factors in determining whether to include a term of supervised release, this provision is unconstitutional. The Court does not agree.

First, the Court notes that petitioner's 60 month term of incarceration followed by 60 months of supervised release is substantially below the 25 year statutory maximum.  Moreover, the facts and reasoning of Apprendi apply specifically to sentences that exceed the statutory maximums; when a defendant's sentence falls well below the statutory maximum, Apprendi does not apply.  See Apprendi, 530 U.S. 466, 481 ("[it is permissible] for judges to exercise discretion--taking into consideration various factors relating both to offense and offender--in imposing a judgment within the range prescribed by statute. We have often noted that judges in

11

this country have long exercised discretion of this nature in imposing sentence within statutory limits in the individual case.").

Finally, petitioner contends that his sentence violates the United States Supreme Court's holdings in Blakely v. Washington, 542 U.S. 296 (2004) and United States v. Booker, 125 S. Ct. 738 (2005).  Petitioner contends that because his sentence of 60 months imprisonment followed by 60 months of supervised release caused his sentence to exceed this Court's determination of a maximum guideline range of 71 months, this Court could not lawfully impose a 60 month period of supervised release.  Petitioner incorrectly argues that the maximum term of supervised release to which the Court could have sentenced him was 11 months.

Initially, the Court notes, as above, that petitioner's sentence of 5 years of imprisonment followed by 5 years of supervised release is well within the statutory guideline range of 25 years. Furthermore, supervisory release is not equated with imprisonment, and any term of supervised release is not added to the term of imprisonment imposed.  Indeed, petitioner was informed at the time of his plea that if he violates the conditions of his supervised release before the term expires he "could be sent back to prison for a term of not more than 3 years in addition to the time that you've previously served." Transcript of Plea of Michael O'Shea II, July 18, 2003, 13:17-19.

Moreover, turning to petitioner's reliance on Blakely and Booker, the Court notes that Petitioner's reliance on Blakely is misplaced.  Blakely extended Apprendi and found that the State of Washington's determinate-sentencing scheme violated the Sixth Amendment right to a jury trial because judges were imposing sentences that were not based solely on the facts reflected in the jury verdict or admitted by the defendant, and were using a preponderance of the

evidence standard to find the facts necessary to impose sentence.  See Blakely, 542 U.S. at 300-306.  The Blakely court also found that the "statutory maximum" for Apprendi purposes, is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.  See id. at 303 (internal citation omitted).  However, Blakely expressly reserved decision on whether such a rule also applies to the Federal Sentencing Guidelines.  See id. at 2538.  The Supreme Court in United States v. Booker subsequently applied Blakely's holding to such Guidelines. 125 S.Ct. 738 (2005).  Therefore, petitioner must demonstrate that Booker, not Blakely, is retroactively applicable to his case.

  In the instant matter, the Court finds that Petitioner does not have a valid § 2255 claim.  The Third Circuit has unequivocally held that Booker does not apply retroactively to initial motions under § 2255 where the judgment was final as of January 12, 2005, the date Booker was issued.  See Lloyd v. United States, 407 F.3d 608 (3d Cir. 2005) (stating that "[e]very federal court of appeals to have considered whether Booker's new rule constituted a 'watershed' rule that would satisfy [the ruling in Teague v. Lane, 489 U.S. 288 (1989)] has held that it does not, and thus, has held that Booker does not apply retroactively to cases on collateral review." (citations omitted)). Petitioner was sentenced by this Court on October 24, 2003, and did not file a direct appeal to the United States Court of Appeals for the Third Circuit.  If a defendant does not pursue a timely direct appeal to the court of appeals, his conviction and sentence become final on the date on which the time for filing such an appeal expired.  See Kapral v. United States, 166 F.3d 565, 577 (3d Cir.1999); Miller v. Dragovich, 311 F.3d 574, 579 (3d Cir.2002).  In a criminal case, a defendant's notice of appeal must be filed within 10 days after the later of the entry of judgment or the filing of the government's notice of appeal.  See Fed.R.App.P. 4(b)(1)(A).

Therefore, Petitioner's judgment became final on November 10, 2003[2], more than 12 months prior to the issuance of the decision in Booker.  Thus, under Lloyd, Petitioner clearly does not have a viable § 2255 claim.  Because I find that petitioner's sentence of 60 months imprisonment followed by 60 months of supervised release did not violate Booker and did not exceed the guidelines, the Court holds that petitioner's second ground for ineffective assistance of counsel is without merit.

### III.   CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate, set aside or correct his December 10, 2002 sentence pursuant to 28 U.S.C. § 2255 is hereby denied.  The Court will issue an appropriate order.


Dated: December 13, 2005

s/ Freda L. Wolfson<br>
Honorable Freda L. Wolfson<br>
United States District Judge

---

[2] Under Fed.R.App.P. 26(a)(2), Saturdays, Sundays and legal holidays are excluded from the computation of time.  Therefore, the 10-day period in which Petitioner had to file an appeal expired on Nov. 10, 2003.  See Fed.R.App.P. 26(a)(2)-(3).